Case number 17-6430 USA v. Mark Brown argument not to exceed 15 minutes per side. Mr. Alig, you may proceed for the appellant. Good morning. May it please the court. Nick Alig on behalf of the defendant appellate Mark Brown. Your multiple Fourth Amendment issues at play in this case and this case is very fact intensive. I'd like to begin with the issue of consent. On August 6, 2016, Maysville police at the Super 8 Motel in Maysville, Kentucky conducted a warrantless entry and search of the hotel room of Mark Brown and the district court was in error in admitting the evidence found there. As I said on August 6, 2016, roughly 2 a.m., Mark Brown entered the Super 8 Motel with a Chasity Smith. Chasity Smith is the person who the police relied on for consent to enter the room. She lacked both apparent and actual authority to grant consent to the room and further, she did not voluntarily consent because she lacked capacity. Did the records show that two people had entered the room? The record showed that the only signed registrant, your honor, was Mark Brown. There were two people listed, two guests, but the only named signed registrant. So the record shows that there were two guests in that room and she is with Mr. Brown, so isn't it reasonable to infer that she is the second guest? After further inquiry and their behavior throughout the night, it is not necessarily reasonable to infer that. No? Is there another woman he's with? There was not another woman. There were no other people, but if I could explain how they entered and her behavior after that, I could show why it's not reasonable. Who do you think is the other guest, then, if it's not her? The other guest? She had been a guest, I would say, in the room, but had tried to leave after the fact. Oh, okay, so she had lost her guest status for the time that she consented? Is that the deal? Yes, that is what I would say. She said something about another woman in the bathroom? She had stated to the police that there may have been other people in the bathroom or somewhere in the lobby. She could not say positively where they were in the hotel room. She couldn't identify the people at the time, but she did say there may be other people present. I gather it's not a very big, it's not like a Hilton Hotel or something, it's just a real small hotel and it's late at night or early in the morning? Yes, Your Honor. There's only one or two people in there, right? Her and this man. At the time, it is a small hotel and it's not tiny. There are at least, I'd say, 40 to 50 rooms there. And there's not a lot of people down in the lobby where they came in. It's her and your client. Yes, sir. That's it. That was it at the time, but there were no other people seen with them that she had claimed and no one else saw any other people. In fact, surveillance video at the Super 8 shows that no other people entered or exited with them. When they arrived at 2 a.m., Brown and Chasity Smith, they approached the front desk clerk. Mark Brown alone paid for the room with his credit card. Mark Brown was, as I said, the only signed registered guest to the room at the time. So what? I mean, if she is a occupant of the room, I mean, she has a right to allow somebody to go into the room, doesn't she? Even if she doesn't have a key. I mean, if she's been given license to that room, she can let people in that room, can't she? She did not have the authority to get a key to the room. I know. Well, who cares about a key? I mean, I'm saying she has been given by the hotel license to stay in that room and because of that, she can open the door and let somebody in, can't she? I would disagree, Your Honor. I think the fact because she did not sign for the room. She didn't have the contract. That's that Fourth Amendment law, though, is it? That's limited by contract rights? I don't think so. I wouldn't say limited by contract rights. I was relying on the case of United States versus Caldwell, which states that really the lodestar of this is the authority to get I think your better argument is that even though she consented, I mean, she may have been impaired when she consented, that he objected to her consent. That was in the affidavit. I think that's your best grounds and then I mean the law is quite clear that if the co-occupant of the room consents, if the defendant objects, that overrides her consent. Pursuant to Georgia versus Randolph. I mean, that's real clear and even though the judge found to the contrary, the affidavit certainly says that because of Brown's objection, we hereby seek the warrant. I think that's your better ground. Yes, Your Honor. I'll pursue that argument then. Well, I mean, you can do whatever you want. Okay. I will get to that. Let's assume that we just accepted everything you said. Okay. She was intoxicated. She couldn't give consent. Somehow the door was open. That was not a questionable way. That they didn't have any right to be there. The real issue is the search. And so the question becomes, let's exclude all that tainted evidence from the warrant. Doesn't the warrant without that tainted evidence have sufficient probable cause stated that the warrant would have been issued anyway? I do not. It did not, Your Honor. And for these reasons. The warrant itself, if we exclude the evidence that I wish to be excluded here, contains two different types of evidence. We have the citizen informants. One is now a person known as Marlene Smith. She was the front desk clerk at the time. She repeated Chastity Smith's statements to the police that Chastity wanted to leave. She didn't really offer anything incriminating to the police at all. She said that the report from the clerk said that Smith had said that he was armed and had additional weapons in the room. That she said another individual may be present that she feared for her own safety. She provided the officers with drugs that she said she had gotten from the scene. Drug dog hits on the vehicle, hits on the door. Tell me why that's not enough to get a warrant. The drug dog hitting on the vehicle, that is separate from the room. That was in the parking lot. That alone would not provide probable cause. Her other statement. It's the totality. Based on the totality, that would not be a controlling factor. I would say that the other factors taken together, Chastity Smith stated that there was a meth lab in the room. There was not proven to be one once they went into the room. She gave him a sack of something that apparently was meth. They thought it was meth, right? They never field tested it, your honor. She said he had guns and was making meth in the room. She said he had a gun on him also. He did not have a gun when he was detained. Probable cause doesn't mean what they say is necessarily true. It's just that it may be. It's more probable. Anyway, it's probable cause that it could be true. That's all. Much of what they, and I agree, your honor, much of what she said was proven to not be true. It doesn't have to be. That's what I agree. You're arguing, well, there really wasn't a meth lab in there, so therefore the warrant should have been issued. You have to look at the time it was issued and what was represented to the magistrate and whether that established there was probable cause. If there was a crime committed and the defendant committed it, I guess, and also the area to be searched would lead to the evidence. I agree. I'm just saying her inaccuracies, if you combine them, not just one alone, her not being correct. We don't look after the fact. We look at the time, right? Yes. We just pick up that affidavit. We strike out that stuff that, all of the things that you're complaining about. Why isn't what's left adequate to get a search warrant? Then, if you can get that, this is an inevitable discovery issue, right? If I may address your probable cause for inevitable discovery. When we look at probable cause, once again, totality of the circumstances, the things that she was saying, even at the time that they went into the room before they got the search warrant, some of them were shown to be inaccurate. I know that is not determinative, but she stated there were other people around in the room. She's not credible or reliable. Some of her statements were shown. What statements were shown to be correct? To be correct. Two loaded weapons in the room, correct? I would agree, yes. Evidence of drugs? Something about a cooler they saw. They did see a cooler. On the flip side, as I said before, no other people. Her state of mind is not exactly one of reliability. Some of it, what she said, proved out through the warrantless search, and some of it did not, but we should exclude her everything? Exclude just, you mean from what she said, Your Honor? Yeah, that she's not a credible witness. I would say she's not partially credible anyway. Not credible enough to get a search warrant. Because of her state of mind at the time, she was stated as, you know, out of her head, jittery, going 100 miles an hour. Multiple police officers said she was under the influence, and she'd never been shown to provide reliable evidence. Well, she provided the dope that Siler said, and here it is. She did. That would corroborate that she had methamphetamine. I don't know that that would corroborate that She was identified in the affidavit. That's another factor. You don't just say a good source or anything like that. Excuse me, Your Honor, I'm asserting you. She was identified in the affidavit, was she not? It's Chastity, whatever her last name was. Smith. What's she? Chastity Smith. Okay, that makes it different from just an unknown, a fine person. I agree, but if I may finish this argument, I see my time's up, Your Honor. Her state of mind, taken together with the fact that much of what she said was proven to be false, as I've said before, about the meth lab, other people being around, and the fact that a drug dog hit on a car do not add up to probable cause that the room contained drugs. And I will yield the lectern. Well, before you do, you're talking about probable cause. Can you move on to inevitable discovery? I did not brief that. I would say that I... It seems kind of obvious to me that if your argument as to the warrant prevails, that then the next step would be, well, would this have been discovered anyway? Or if your argument as to the first search was unconstitutional, if the second search is constitutional, we would have to exclude the fruits of the poisonous tree from the unconstitutional warrantless search. But if we did that, and the warrant is supported by probable cause, then the evidence that was seized, the gun and the drugs, would come in. So what's wrong with that argument? To respond, I would say that the inevitable discovery doctrine would not apply to evidence that was illegally obtained. So that's the first search. Okay, even if you're right on that, you exclude the first two guns and the cooler, but he's charged with possession of a firearm, and they found a third gun with the warrant search, and then they found the drugs with the warrant search. So that's sufficient to sustain the conviction, isn't it? I disagree in that the inevitable discovery doctrine would not apply because that warrant would not have issued were it not for what I say the evidence of it should be excluded. I don't think the inevitable discovery doctrine would allow for the admissibility of the evidence because of the fact that it would not have been in the warrant, which would not have allowed the affidavit for the warrant, which would not allow a warrant to trigger the issuance of the warrant. So you go back to probable cause. If there were probable cause to issue the warrant, then you would concede that the evidence comes in? If there were probable cause for the warrant to issue without the fruits of what I say is an unconstitutional search, I could concede that I haven't briefed the issue. I don't believe it applies, Your Honor. All right. I mean, I think that's what the law is, but I... Okay. All right. Let's hear from the other side. How much rebuttal do you have? Five minutes, Your Honor. Very well. Good morning. Good morning. May it please the Court. Dimitri Slavin for the United States. Judge Griffin, I'll jump straight to the warrant affidavit and that sentence. Officer Highlander's testimony at the suppression hearing, I think, explains that. So what he said at the suppression hearing, and this is on at R31 at 117, is that the only thing that Brown said was, I have nothing to say. My lawyer will speak for me. Later, when Officer Highlander was doing the affidavit, what happened was the Commonwealth's attorney wrote up the warrant application, the affidavit. Officer Highlander, who was in the middle of securing the premises, getting ready to do the search once the warrant was approved, quickly glanced over it. There's actually a typo in that sentence. It said Mark Smith instead of Mark Brown. Because he briefly looked over it, he didn't catch it. It did not accurately say what Mark Brown said, which is simply that he refused to speak to police. He never actually refused or objected to the search. That's what he said, though. That's what he represented to the court. That was what was in the affidavit. That's a representation to the court under oath. Now he says that's false? Maybe it was, but it's pretty strong evidence that it's a representation. I think the district court in this case, there was no refusal. Did the district court consider the affidavit and how did he dismiss it? It was brought up in the suppression hearing. The district court's finding was that the only statement that Brown made was... Did the district court make a ruling on the affidavit? You're giving me a scenario of what might have happened, but is there a ruling by the district court that says that your scenario is what occurred? What the district court said, and this is on page ID 247, is, quote, at no time during their brief encounter with the defendant, the officer speak to him about searching his hotel room. Now the district court did not specifically say, I think in that ruling, the affidavit says this, but I find that that No, it did not. But the affidavit said, due to the objection of Mark Smith, they obtained the search warrant, right? Yes, that is in the affidavit, but I think the officer's testimony shows that the reason they obtained the warrant, they had the consent to search the room, they obtained the warrant out of... All right, well, let's get past that anyway, and if the warrant was supported by probable cause, and I think it was, is that the end of the case? Because what they found in there supports the conviction and the the fruits of the prior warrantless search really don't make any difference? Yes, I mean, that is absolutely correct, Judge Griffin. The second search was pursuant to a warrant. The second search uncovered the drugs. It uncovered an additional gun, and that search was supported by probable cause. At that point, a dog had hit on the room. They had walked the dog along that entire floor. It had only reacted on one room, and that was Mr. Brown's room. Chastity Smith had said that there were guns in the room, and by that point, when they were seeking the warrant, they had already determined that Mr. Brown was a felon. So there's a felon, and if they determined that by looking at the guns and obtaining the serial numbers, then they may not have been able to use that. The question is, what was the basis of their determination that he was a felon? They had looked up his criminal history at that point. That had... Based on his Let's put aside your earlier claims and exclude all the evidence from the initial walk into the room. The question becomes, don't you have enough there to state probable cause to have done the search? Yes, Judge. And then you have inevitable discovery. I think you've got some problems with the other. I think you've got problems with a clearly intoxicated witness. You've got problems of consent. You've got problems of objection, even if the guy said, I didn't look at it. It doesn't matter what the police officer says after the fact. He presented an affidavit to a judge that said, this man objected, and under the law, if he objects, you're not going to be able to go in. So put it all aside. Do you need it? No, Your Honor. Well, then why don't you need it? Because that's your best argument. There was probable cause regardless. As I said, Ms. Smith had said that there were guns in the room, that there was methamphetamine in the room. She said she was afraid? She said she was afraid. The front desk clerk also said that she was afraid of Mr. Brown. She had given some methamphetamine to police. It was a baggie. It wasn't field tested at the time, but it was a baggie full of small crystals that was clearly packaged as crystal meth would be. And certainly, the police, based on their experience, could tell that that was almost certainly methamphetamine. Also, Mr. Brown, when they patted him down, he had $10,000 in cash on his purse. Well, in cash and savings. About half of it was in cash. Half of it was in $1,000 bonds. He had that on his purse in a cheap motel in the middle of the night. That was in the affidavit. That was all in the affidavit. Ms. Smith also said, that there were pills in the room in addition to methamphetamine. All of that would have been in the affidavit if they had never gone into that room. That all would have still been in that search warrant affidavit. So even if you strike everything from the room, there's still enough there to issue the warrant and for probable cause. And I think, based on his registration, they would have identified him as a felon, and she said that there were guns in there. So even if they had never stepped in the room, never gotten his ID, they would have figured out that he was a felon, and they had a report from Ms. Smith that he had guns in the room. And I would just say one more thing. We've put it aside, but real briefly, just on Ms. Smith's impairment. Every officer during the suppression hearing had testified that she did not, that while she appeared intoxicated, that she clearly answered her questions, that she was hyperactive, that she was responsive. And then the other Ms. Smith, the desk clerk, had testified that she did not think, both testified at the day of trial that happened, and actually said to the defense's investigator when he came to question her, that she did not think that Ms. Smith was impaired. And the district court actually found... I thought the desk clerk said, I wouldn't have given her a key in her condition. I think she did say that at some point. I think she did say that somewhere. I think that is somewhere. You've seen how she signed the note, completely illegible, and the writing representing how she had explained things. I've questioned whether there is any coherence in that kind of a statement. I agree. And that's problematic under the law, isn't it? There could be a problem, but there's also evidence that she was responsive, that she gave good information, a lot of it which was corroborated. It is a factual finding that she was not impaired, that Judge Bunning made a factual finding that she was not impaired and could consent. And I think there's enough here that it's not clearly erroneous, and that she was responsive. You don't have to have that. We don't have to have that. We don't have to have that to win. Regardless of everything else, we win based on an affidavit that, even striking everything in the room, establishes probable cause. There are no other questions. We ask that you affirm. Thank you. All right. Thank you. Rebuttal? If I may, with the issue of the felon status of Brown, it was testified to by Officer Tim Smith, another Smith in this case, that his felon status was not known until after the serial numbers on the guns were read. They could just do a check on him, can't they? Do they have to trace him through the guns? Can't they just trace him through their database to see if he's got a felony conviction? I mean, they could do that, but this is a matter of timing when we're talking about... Well, I would think it'd be faster to just do a criminal check on him to find out what his criminal record is, rather than trace the serial numbers. The felon status, I think, is... That's certainly going to be inevitably discovered. And it's very easily done, I would think. I just wanted to address the timeline, Your Honor. Okay. Maybe a check of the serial numbers wouldn't be as fast, but the fact that his felon status was not known when the serial numbers were read... I mean, I would say, so what? There's no big deal on the serial numbers. Yeah, he's charged with possession of the guns, but it's because they were in his room, not because he owns them. They don't have to prove he owns the guns to say that he's got possession of them. I was just getting to the issue of one of the arguments under Arizona v. 6, which I think you were alluding to, Judge Strange, was that if you pick up a piece of evidence and start to read off serial numbers before you have any probable cause that it is an incriminating item, that violates the dictates of that case. That was the point I'm making. When the officers intercepted him in the lobby, did he give them his name? He did not. Okay, because what he said is, I'm not going to talk to you at all until I have an attorney. From what the record states, they approached him. He approached them in the lobby. Chastity Smith's also there. They asked for ID and wallet. So, I mean, he identified himself in that in as much as he gave them an accurate identification. His wallet. He had his wallet on him at that time. It was in his pocket, and they asked for ID, to which he then provided. Well, then, he's given them the ability to find out his felon status. Truly, but once again, they did not know at that time. He did hand it over. Did he check into the room under an alias? No, it was under Mark Brown. All right. It was. All right. I can say, all right, who entered the room? Mark Brown. Okay, let's see. Is he a felon or not? I don't think it takes that long. Understood. If I may get back to what I was just saying about when he was approached, Brown was compliant with the officers. He was held the whole time. And to get to the issue under Georgia v. Randolph, which you alluded to earlier, Judge Griffin, objected. Even though the record doesn't state exactly how he did it, I would credit the sworn testimony in Sergeant Highlander's affidavit that Mark Brown did, in fact, object. Because of this objection . . . We have to, don't we? I mean, he gave it to the judge. I would. I think you should, yes. That's why they said they needed an affidavit. I mean, it was because of his objection that they sought the affidavit, or they sought the warrant. With regards to Inevitable Discovery, Judge, at that point, maybe his name was on there, but it is never alluded to in testimony that the police would have checked for, at least on the record, checked about Brown's felon status before they had talked to Smith, before they had gotten consent to go upstairs. Just as a matter of evidence, I'd never seen where, and I believe there has to be a preponderance of the evidence under the Inevitable Discovery doctrine that evidence would be found. I don't know that . . . What's the difference? They know that there's drugs up there. The second charge is felon in possession of the firearm, but they still have least probable cause to go for the drugs, right? I don't . . . Even if they don't know he's a felon, right? To go into the room for the drugs? Yeah. I don't think so, just because Chasity Smith handed a bag of drugs to them. No, to obtain a warrant. To obtain a warrant. This is a warrant issue in this case. So that's the question. Pull out everything that they shouldn't have said, and is what's left sufficient? As I've stated before, I do not think it is. What was . . . And there are the bald repetitions of Chasity Smith's statements from Marlene Smith. Chasity Smith's providing inaccurate information for the most part. Some of it was truly, but a lot of it was not inaccurate. Her condition would also show that police should not rely on her because of her mental and physical state. And the fact that a drug dog hit on the car doesn't necessarily tie a car to a room that's upstairs more than 100, probably more than 200 feet away from the car itself. And I see that I'm out of time. Really, my last argument was one just about the dog hitting on the door, hitting on the room to provide probable cause. It wasn't brought up, but the case of Florida versus Jardines would suggest that there's problems with that. Though that case was limited to running a drug dog on a house . . . That's not in the affidavit, is it? It's not, but it was brought up to show that there might be probable cause to enter the room without a warrant. That is not . . . Oh, did the dog do that before the warrantless entry? Yes. Oh, okay. It was in the warrant. That was not in . . . In the affidavit. Well, the affidavit talks about the dog hitting on the car, but I don't think it talks about the dog hitting on the door of the room, right? Correct. Okay. All right. Any further questions? All right. Thank you very much. The case will be submitted. I believe that concludes the oral argument docket. You may adjourn the court.